UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OLIVER PICKETT, JR., as Personal
Representative of the ESTATE OF
OLIVER PICKETT, SR.,

      Plaintiff,

v.                                                              CASE NO. 3:09-cv-10116-J-37JBT

R.J. REYNOLDS TOBACCO COMPANY,

      Defendant.
_____/

# **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on R.J. Reynolds Tobacco Company's Motion for Attorneys' Fees ("Motion") (Doc. 179), Plaintiff's Opposition to Defendant's Motion for Attorneys' Fees ("Response") (Doc. 181), and Defendant's Reply in Support of Its Motion for Attorney's Fees ("Reply") (Doc. 187). For the reasons stated herein, it is respectfully **RECOMMENDED** that the Motion be **DENIED**.

The sole issue presented is whether Defendant's proposal for settlement "was

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1).

not made in good faith" within the meaning of section 768.79(7)(a), Florida Statutes.[2] After a review of the parties' submissions and the record in this case, the undersigned recommends that the Motion be denied because Plaintiff has met his burden of demonstrating that Defendant's offer was not made in good faith.

**I.      Background**

Plaintiff Oliver Pickett, Jr., as Personal Representative of the Estate of Oliver Pickett, Sr. ("Plaintiff"), brought this *Engle* progeny wrongful death lawsuit against Defendant R.J. Reynolds Tobacco Company ("Defendant") arising from the death of his father, Oliver Pickett, Sr. ("decedent").  The lawsuit was brought on behalf of the decedent's estate and his survivors Oliver Pickett, Jr. and Cindy Lee Voss, decedent's daughter.[3]  Plaintiff claimed that as a result of the decedent's addiction to cigarettes manufactured by Defendant, the decedent developed lung cancer and died.[4]  (*See* Joint Pretrial Statement at 2, Doc. 87.)

On December 22, 2011, Defendant served Plaintiff with a Proposal for Settlement pursuant to Florida Statutes section 768.79 to resolve all claims against R.J. Reynolds in this action.  (Doc. 179-1.)  The proposal was for a total amount of

---

[2] Plaintiff does not raise any other issues or dispute the amount sought of $41,860.00.

[3] At trial, Plaintiff requested damages only on behalf of the two survivors. (*See* Doc. 152.)

[4] Plaintiff's First Amended Complaint named a number of defendants, most of whom were dropped in the Second Amended Complaint. (*Compare* Doc. 17 *with* Doc. 21.)  Philip Morris USA Inc., the only defendant named in the Second Amended Complaint other than R.J. Reynolds, was voluntarily dismissed with prejudice prior to trial.  (Doc. 122.)

$10,000.00.  (*Id.* at ¶¶ 1-2.)  The proposal stated that it did not include any amount for costs, interest, or attorney's fees (*id.* at ¶ 7), and offered zero dollars for the punitive damages claim.[5]  (*Id.* at ¶ 8.)  Plaintiff did not accept the proposal within thirty days.

On March 13, 2012, the case proceeded to jury trial.  (Doc. 133.)  On March 26, 2012, the jury returned a verdict.  (Doc. 151.)  The jury found that the decedent had been addicted to cigarettes containing nicotine, that his addiction was a legal cause of his lung cancer and death, and that Defendant's placement of defective and unreasonably dangerous cigarettes on the market was a legal cause of his death.  (Doc. 152 at ¶¶ 1-2, 3.)  The jury found against Plaintiff on his negligence, fraudulent concealment, and conspiracy to fraudulently conceal claims and his request for punitive damages.  (*Id.* at ¶¶ 3, 5-6.)  The jury also allocated 50% of the fault for the decedent's death to the decedent and 50% to Defendant.  (*Id.* at ¶ 7.)  However, the jury awarded zero damages to both of the decedent's survivors.  (*Id.* at ¶ 8.)  On March 28, 2012, the Court entered Final Judgment in favor of Defendant and against Plaintiff.  (Doc. 177.)

On April 25, 2012, Plaintiff moved to alter or amend the Final Judgment to

---

[5] The proposal did not include any statement explaining Defendant's reasoning for the amount offered.  Such a statement is not required under Florida law.  *See* Fla. Stat. § 768.79; Fla. R. Civ. P. 1.442.

reflect that he, not Defendant, was the prevailing party.[6] (Doc. 182.) On June 18, 2012, the Court denied Plaintiff's motion, holding that Defendant had prevailed both legally and practically. (Doc. 189.)

Fourteen days after Final Judgment was entered, on April 11, 2012, Defendant timely filed the instant Motion. (Doc. 179.) In it, Defendant requests an award of attorney's fees pursuant to Florida Statute section 768.79, Federal Rule of Civil Procedure 54(d)(2), and Local Rule 4.18. (*Id.*) Plaintiff opposes Defendant's Motion and an award of attorney's fees, arguing that Defendant's offer was for only a nominal amount not based on good faith. (Doc. 181.)

## II. Applicable Standard

The Eleventh Circuit has held that the Florida offer of judgment/demand for judgment statute, Florida Statutes section 768.79, and the rule implementing it, Florida Rule of Civil Procedure 1.442, apply in diversity cases where the substantive law of Florida applies. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001), *modified in part by* 311 F.3d 1077 (11th Cir. 2002); *see Bowers v. Universal City Dev. Partners, Ltd.*, 2005 WL 1243745, *2 (M.D. Fla. May 19, 2005); *Walker v. Bozeman*, 243 F. Supp. 2d 1298, 1304 (N.D. Fla. 2003); *see also Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 80 (Fla. 2012) (holding on

---

[6] In the same motion, Plaintiff also moved for a new trial on a number of bases that are not relevant here. (Doc. 182.)

certified question from the Eleventh Circuit that "section 768.79 is substantive in nature both for constitutional and conflict of law purposes").

Section 768.79, provides in pertinent part:

(1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer . . . .

. . . .

(7)(a) If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.

Fla. Stat. § 768.79; *see also* Fla. R. Civ. P. 1.442(h)(1) (containing language nearly identical to section 768.79(7)(a)). The Florida proposal for settlement scheme has been the source of "a significant amount of independent litigation," *Se. Floating Docks, Inc.*, 82 So. 3d at 79, including on the issue of whether an offer of judgment was made in good faith.

The Eleventh Circuit appears to have last considered whether an offer was made in good faith in *McMahan v. Toto*. There, the defendant made a nominal offer of $100, which the plaintiffs rejected. 311 F.3d 1077, 1083 (11th Cir. 2002). At the time of the offer, the district court had denied defendant's motion for summary judgment, and the plaintiffs argued that defendant had "millions of dollars of potential

5

liability." *Id.* However, the defendant did later prevail. *Id.* In considering the defendant's request for fees and costs, the district court found the offer was made in good faith. *Id.* The Eleventh Circuit stated that the district court's finding of good faith would be reviewed "only for clear error." *Id.* In finding no such error, the court noted that, under Florida law, "[a]lthough 'nominal offers are suspect where they are not based on any assessment of liability and damages,' they can be valid if the offerors have 'a reasonable basis at the time of the offer to conclude that their exposure was nominal.'" *Id.* (quoting *Fox v. McCaw Cellular Commc'ns of Fla., Inc.*, 745 So. 2d 330, 332-33 (Fla. 4th DCA 1998)) (citations omitted). Under the "clear error" standard of review, the court affirmed the district court's finding that $100 was a good faith offer in that case, primarily because the defendant's ultimate success indicated that the defendant had a "reasonable basis for believing that [it] would prevail" at the time it made the offer. *Id.* at 1083-84. The court did not delve deeper into the circumstances surrounding the offer.

For its part, the Florida Supreme Court reaffirmed as recently as last year that an award of fees and costs under section 768.79 is a "sanction" designed to dissuade parties from "rejecting presumably reasonable settlement offers." *Se. Floating Docks, Inc.*, 82 So. 3d at 79. The supreme court has also held that section 768.79 and Rule 1.442, in light of their punitive nature, "must be strictly construed in favor of the one against whom the penalty is imposed and never extended by construction." *Sarkis*, 863 So. 2d at 222. In terms of construing the definition of

6

"good faith," however, the Florida District Courts of Appeal ("DCAs") have provided the most guidance.[7]

The DCAs have made clear that the good faith analysis is fact-driven and requires a review of the totality of the circumstances at the time of the offer. *Gurney v. State Farm. Mut. Auto. Ins. Co.*, 889 So. 2d 97, 99 (Fla. 5th DCA 2004). The focus of the court's good faith review is "'whether the offeror had a reasonable foundation upon which to make the offer.'" *Liggett Group, Inc. v. Davis*, 975 So. 2d 1281, 1285 (Fla. 4th DCA 2008) (quoting *Levine v. Hall*, 791 So. 2d 1175, 1178 (Fla 4th DCA 2001). The party opposing the award of fees bears the burden of establishing a lack of good faith. *McGregor v. Molnar*, 79 So. 3d 908, 911 (Fla. 2d DCA 2012). Whether the offeree had a reasonable basis to reject the offer is irrelevant.[8] *Wagner v. Brandeberry*, 761 So. 2d 443, 445 (Fla. 2d DCA 2000).

A good faith offer "'need not equate with the total amount of damages that might be at issue.'" *Gurney v. State Farm Mut. Auto Ins. Co.*, 889 So. 2d 97, 99 (Fla. 5th DCA 2004) (quoting *Nants v. Griffin*, 783 So. 2d 363, 365 (Fla. 5th DCA 2001)).

---

[7] In applying Florida substantive law, this Court follows the rulings of the Florida Supreme Court. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011). Where the supreme court has not spoken, the Court must, as a general mater, follow the decisions of the Florida District Courts of Appeal. *Id.*

[8] Although this appears to be a correct statement of Florida law, *TGI Friday's, Inc. v. Dvorak*, 663 So. 2d 606, 611 (Fla. 1995), it is inconsistent with the stated purpose of the statute being to sanction unreasonable rejections of offers. *Sarkis*, 863 So. 2d at 218. This basic contradiction, i.e., that the very purpose of the statute is irrelevant when applying it, appears to be at least one reason for the "significant amount of independent litigation" in this area. *See Se. Floating Docks, Inc.*, 82 So. 3d at 79. Furthermore, it makes interpretation of Florida law in this area difficult and unpredictable.

Moreover, even nominal offers do not evidence lack of good faith *per se*; rather, a nominal offer may be a good faith offer if the offeror "had a reasonable basis at the time of the offer to conclude that [its] exposure was nominal." *Fox v. McCaw Cellular Commc'ns of Fla., Inc.*, 745 So. 2d 330, 333 (Fla. 4th DCA 1998).  However, "nominal offers are suspect where they are not based on any assessment of liability and damages." *Id.* at 332.

In a recent opinion, the First DCA confirmed that the good faith inquiry is both a subjective and objective one. *Arrowood Indem. Co. v. Acosta, Inc.*, 58 So. 3d 286, 289-90 (Fla. 1st DCA 2011).  Pertinent objective factors include the amount of the offer, the potential liability, the timing of the offer, the complexity of the case, and the totality of the entire case record. *Id.* at 289-90.  The *Arrowood* court held that the trial judge erred in relying solely on objective factors in determining that an offer was not made in good faith. *Id.* at 290.  Although a court "may properly consider objective evidence of facts and circumstances that suggest whether the offeror made the offer with subjective good faith," it must also consider the offeror's subjective justification for its offer. *Id.* at 290.  The court concluded: "Rather, the trial court was required to consider Arrowood's explanation and then determine whether, despite consideration of the objective factors cited by the court, Arrowood had a subjectively reasonable belief on which to base its offer."[9]  *Id.*

---

[9] Although the court's use of the term "subjectively reasonable" is somewhat confusing, the court's message to the trial judge, that reliance on objective factors alone is improper, is clear.

Though the Eleventh Circuit in *McMahan* suggested that a party's ultimate success at trial provides strong support for a finding of good faith, the Florida DCAs, both before and after *McMahan*, have been willing to deny fees to a party even when they won at trial.  *See, e.g. Event Serv. Am., Inc. v. Ragusa*, 917 So. 2d 882, 884 (Fla. 3d DCA 2005) (affirming denial of fees to defendant who won at jury trial); *Eagleman v. Eagleman*, 673 So. 2d 946, 947 (Fla. 4th DCA 1996) (same); *see also Hendrix*, 2011 WL 1299874 at *1 (refusing to award fees though party won partial summary judgment and all remaining claims were dismissed pre-trial).  If a party's later success at trial automatically equated to a finding of good faith at the time the proposal was made, the "good faith" provision in both the statute and rule would be rendered meaningless.

### III.  Discussion

In this case, Plaintiff does not dispute that the prerequisites for an offer of judgment are met:  Defendant made a written offer of judgment to settle Plaintiff's claims for a specified amount that included specific, required provisions on punitive damages and attorney's fees, and the judgment ultimately returned ($0) was more than twenty-five percent below Defendant's offer of judgment (i.e., $7,500.00).  The sole issue is whether the Court should disallow the award of fees on the ground that the offer was not made in good faith.  (*See* Doc. 181 at 1.)

In opposing an award of attorney's fees, Plaintiff argues that Defendant's statement that it believed, based on the evidence anticipated at trial, that Plaintiff

would be unable to carry the burden on causation, reliance, and damages, is conclusory and insufficient. (*Id.* at 6.) According to Plaintiff, the jury's *Engle* class finding and strict liability findings support his argument that Defendant's belief was not reasonable. (*Id.* at 3.) Plaintiff also notes that, at the time of the offer in this case, Defendant knew that the decedent's medical and funeral expenses alone exceeded the amount of the offer and that plaintiffs in state *Engle* trials had been awarded millions of dollars in damages. (*Id.* at 3, 7-8.) Finally, Plaintiff argues that developments in this case shortly before the offer indicate that Defendant's potential exposure at the time was not nominal. (*Id.* at 7.)

In its Reply, Defendant contends that (1) the jury verdict in its favor here bears out its argument that it was reasonable in believing Plaintiff would not prevail and recover damages; (2) of the three other federal *Engle* progeny trials, two resulted in zero damages and other resulted in an award of only $7,677; (3) defendants have won state court *Engle* progeny trials; and (4) plaintiffs in other *Engle* progeny cases, including plaintiffs represented by Plaintiff's co-counsel here, have accepted offers in the same range as Defendant's offer here. (Doc. 187 at 1.) Finally, as an example in support of its argument, Defendant cites one state *Engle* progeny case where an offer of judgment for $3,400 from Defendant and Philip Morris USA Inc.

collectively was deemed by the trial judge to have been made in good faith.[11] (*Id.* at 6.)

### A. Plaintiff Has Met His Burden of Showing That Defendant's Offer of Judgment Was Not Made in Good Faith

The burden of demonstrating a lack of good faith rests on Plaintiff here. *McMahan*, 311 F.3d at 1083. After reviewing the record in this case, the undersigned finds that Plaintiff has met his burden of demonstrating that Defendant did not have a reasonable basis for its nominal offer at the time such offer was made.

Plaintiff correctly points to certain case developments only shortly before Defendant made its offer of judgment. As Plaintiff notes, two days before the offer, the Court denied Defendants' motions for summary judgment on punitive damages. (Doc. 61 at ¶ 3.) The Court had also denied Defendants' motion for partial summary judgment on comparative negligence a month earlier. (Doc. 44.) The fact that the Court found triable issues of fact suggests that Defendant's risk of exposure was not nominal.[12] *See Event Servs. Am., Inc.*, 917 So. 2d at 885-86 (reasoning that

---

[11] After receiving and reviewing all the briefs on this issue, the Court requested that the parties file notices of supplemental authority advising the Court of any Florida appellate court authority addressing any of the issues before the Court in the context of a tobacco case. (Doc. 191.) Neither party was able to find any. (Doc. 192; Doc. 193.)

[12] The Court had also denied certain of Defendant's *Daubert* motions and motions *in limine*. (Doc. 61.) Further, on December 20, 2011, just two days before Defendant's offer, Judge Corrigan issued his order in *Waggoner v. R.J. Reynolds Tobacco Co.* holding that giving preclusive effect to the *Engle* findings did not deprive Defendants of due process. 835 F. Supp. 2d 1244, 1272 (M.D. Fla. 2011).

surviving summary judgment suggests a nominal offer of judgment was not made in good faith and that the case "really needed to be litigated").

Plaintiff also relies on additional objective factors that indicate that Defendant knew at the time of its offer that the amount of its potential exposure was much greater than $10,000. As one additional objective consideration, Plaintiff represents that Defendant knew at the time of its offer that the total amount of decedent's medical and funeral expenses alone was in excess of $30,000, though Plaintiff later withdrew his claim for those expenses. (Doc. 181 at 3.) Of course, Defendant's significant potential exposure was to the decedent's son and daughter for their alleged mental pain and suffering and loss of decedent's companionship.

The history of *Engle* progeny trials in state courts at the time of Defendant's offer indicated that, for a given case that proceeds to trial, the outcome was uncertain, but the potential verdict was very high. (Doc. 187 at 4-5.) In the time frame of Defendant's offer, plaintiffs had won a majority of the cases tried to verdict in state court, with a range of compensatory damage awards of $100,000 to $55,000,000.[13] (Supplemental Report of Temporary Special Master ("TSM") on Case Management of the *Engle* Progeny Cases, Doc. 503 at 35 (counting thirty-seven plaintiff verdicts versus eighteen defense verdicts).) Of the thirty-seven

---

[13] The $55,000,000 award came in *Naugle*. After the verdict in that case, the trial court granted remittitur and reduced the compensatory damages award. *Philip Morris USA, Inc. v. Naugle*, Nos. 4D10-1607, 4D10-3574, 2012 WL 617108, at *1 (Fla. 4th DCA Dec. 12, 2012). The Fourth DCA later ordered a new trial on damages. *Id.* at *4.

plaintiff verdicts, the jury had awarded punitive damages in twenty-five, with one punitive damages award as high as $244,000,000.[14] (*Id.*) As summarized by the TSM:

> As of November 15, 2011, according to the Courtroom View Network, total verdicts were $495,000,000 before reductions for comparative negligence. This results in an average award of $9,300,000 (median of approximately $2,000,000) across all trials and an average award of $14,100,000 (median of approximately $5,000,000) when defense verdicts are excluded.[15]

(Doc. 503 at 35.)

Thus, even allowing for reductions for comparative negligence, remittiturs, reversals, and defense verdicts, from an objective standpoint, the undersigned concludes that Defendant's offer was nominal in comparison to its potential and realistic exposure. The results in prior *Engle* progeny cases weigh strongly in favor of finding that Plaintiff has met his burden of showing that Defendant's offer was not made in good faith. *See Arrowood Indem. Co.*, 58 So. 3d at 290 (identifying the amount of the offer and the offeror's potential exposure as factors to consider in evaluating good faith). However the undersigned will consider Defendant's justifications for its offer.

---

[14] This amount was awarded in *Naugle*, and so it has been reversed and remanded for a new trial on damages. *Naugle*, 2012 WL 617108, at *4.

[15] Comparative negligence allocations to smokers have typically been significant but variable. According to Courtroom View Network, the jury allocated comparative negligence of 50% or less in twenty-two of the thirty-seven plaintiff verdicts. *CVN's Engle Verdict Tracker*, Courtroom View Network, http:info.courtroomview.com/engle-verdict-tracker (last visited Feb. 13, 2013).

## B. Defendant's Justifications for Its Offer of Judgment Are Not Supported by the Circumstances at the Time of the Offer

Although the undersigned finds that the objective factors support Plaintiff's argument that Defendant's offer was not made in good faith, the Court must consider Defendant's subjective explanations for its proposal. *Arrowood Indem. Co.*, 58 So. 3d at 290. As noted in *Fox*, the Court should consider the entire record in its analysis. 745 So. 2d at 333. Given the strength of the objective factors in Plaintiff's favor, and the weakness of the provided subjective explanations, the undersigned is unable to find even a "subjectively reasonable" good faith basis for the offer of judgment in this case. Therefore, the Motion is due to be denied.

The two affidavits attached as exhibits to Defendant's Motion attest to the amount of attorney's fees requested, but are silent as to the reasons for the proposal. (*See* Doc. 179-5; Doc. 179-6.) Thus, neither the Motion nor the Reply provides an evidentiary basis that might explain the amount offered. The subjective justifications provided by the Defendant in its Reply appear to be largely after-the-fact rationalizations that provide little insight into Defendant's state of mind at the time the offer was made.

Defendant's first justification—the jury verdict here— is a valid, but unhelpful consideration. The reasonableness of an offer of judgment is measured at the time of the offer. *Fox*, 745 So. 2d at 333. A review of the Florida case law regarding section 768.79 reveals that courts have rejected or reversed attorney's fees awards

even though the offeror had obtained summary judgment or received a verdict in its favor at trial. *See, e.g. Hendrix*, 2011 WL 1299874, at *1; *Event Serv. Am., Inc.*, 917 So. 2d at 884; *Eagleman*, 673 So. 2d at 947. Thus, the fact that the jury awarded zero damages here does not require that the Court award attorney's fees to Defendant.[16] Instead, the Court considers the result of the trial along with the other pertinent objective and subjective factors. *Fox*, 745 So. 2d at 333. Moreover, the verdict here, essentially one of partial liability but no damages, was somewhat unusual and unpredictable. Thus, it is not an overwhelmingly persuasive factor in Defendant's favor, given the jury's finding that the decedent was a member of the *Engle* class and finding against the Defendant on strict liability.[17]

In its second justification, Defendant asserts that the verdicts in the other federal *Engle* progeny cases "confirm[] the reasonableness of Reynolds' proposal in this case . . . ." (Doc. 187 at 5.) However, none of the federal verdicts referenced in the Reply had occurred by the time of the offer in this case. Defendant served its proposal on December 22, 2011. (Doc. 179-1.) The verdicts in *Gollihue*, *Young McCray*, and *Duke* were rendered on February 16, 2012, March 19, 2012, and April 10, 2012, respectively. (*See Gollihue v. R.J. Reynolds Tobacco Co. et al.*, 3:09-cv-

---

[16] As previously explained, otherwise the "good faith" inquiry might as well be eliminated from the statute and rule.

[17] Defendant does not argue that even given a liability finding, a minimal or no damage award was predictable for some reason, such as family relationships or the lack thereof.

15

10530-J-37JBT, Doc 132; *Young McCray v. R.J. Reynolds Tobacco Co. et al.*, 3:09-cv-11895-J-37JBT, Doc. 189; *Duke v. R.J. Reynold Tobacco Co., et al.*, 3:09-cv-10104-J-37JBT, Doc. 164.) In considering whether a nominal offer of judgment was made in good faith, the Court is tasked with determining whether Defendant had a "reasonable basis *at the time of the offer* to conclude that [its] exposure was nominal." *Fox*, 745 So. 2d at 333 (emphasis added). Clearly, verdicts that had not yet been entered in other cases could not have informed Defendant's decision to make its offer of judgment in this case. Thus, the undersigned declines to consider the jury verdicts in *Gollihue*, *Young McCray*, and *Duke* on the issue of good faith as to Defendant's offer here.

In its third justification, Defendant suggests that the history of *Engle* progeny cases in state courts actually supports its offer. (Doc. 187 at 4-5.) Indeed, defendants have received a number of favorable verdicts in state courts. (*Id.*; Doc. 187-1.) However, as discussed above, in the time frame of Defendant's offer at least, plaintiffs had won a majority of the cases tried to verdict. (Doc. 503 at 35 (counting thirty-seven plaintiff's verdicts and eighteen defense verdicts).) And as previously noted, many verdicts had been in the millions and even tens of millions of dollars. Thus, the results in prior *Engle* progeny cases weigh against this asserted justification.[18]

---

[18] Indeed, the defendants in the federal *Engle* progeny cases have noted that "the stakes are high" and have referred to their potential exposure as justification for not limiting discovery. (*See, e.g.*, Doc. 550 at 34.) Moreover, it is apparent from the record that the

In its final justification for its offer, Defendant references a number of other cases that were resolved for amounts close to its offer here, including cases with the Wilner firm and three state court cases with other firms that resolved through similar offers of judgment. (Doc. 187 at 5.) The undersigned agrees that a history of accepted offers in similar cases might suggest that a similar offer has a good faith basis. However, Defendant provides very little information about these other cases to suggest they are similar.[19] Its Reply also references a mediation of state cases with the Wilner firm about four months before the offer here, where 48% of the cases were resolved, with the largest settlement being $19,932. (*Id.*) However, again, there is nothing in the Reply to indicate that the settled cases were in the same position factually or procedurally as this case was at the time of the offer was made.

The case law on section 768.79 indicates that, since the good faith inquiry is case-specific, courts are unwilling to set a threshold amount that dictates whether an offer was or was not made in good faith. So Defendant correctly notes that offers for as little as $1 have been found to be good faith offers. (Doc. 187 at 3 (citing

---

*Engle* defendants, including R.J. Reynolds, are expending significant resources in defending these cases, a clear indication that they view their exposure as much more than nominal.

[19] Moreover, the state court proposals were made on June 2, 2011, November 10, 2011, and December 2, 2011. (Doc. 187-2 at 6, 23, 32.) The offer here was made on December 22, 2011. (Doc. 179-1.) As noted earlier, Judge Corrigan entered his order in *Waggoner v. R.J. Reynolds Tobacco Co.* two days earlier, on December 20, 2011. The three state court proposals state that they are based on a good faith belief that the plaintiffs could not rely on the *Engle* findings or prove causation. (Doc. 187-2 at 3-4, 20-21, 28-29, 38-39.) In light of *Waggoner*, Defendant's offer here could not, in good faith, have been based on a similar belief with respect to the *Engle* findings, at least at the trial level.

*State Farm Mut. Auto. Ins. Co. v. Marko*, 695 So. 2d 874, 876 (Fla. 2d DCA 1997).) But courts have also found that offers in the range of Defendant's $10,000 offer here were not made in good faith. For instance, in *James v. Wash Depot Holdings, Inc.*, a $10,000 offer, made after substantial discovery and after dispositive motions were briefed, was deemed not in good faith under the circumstances. 489 F. Supp. 2d 1336, 1341 (S.D. Fla. 2007). The court determined that the offer did not reflect a "reasonable and realistic assessment" of defendant's potential liability and the possibility of significant damages. *Id.* That is the case here as well, even considering Defendant's subjective explanations.

Finally, the Clay County circuit court's ruling in *Olivia v. R.J. Reynolds Tobacco Co.* does not compel a different result. The materials submitted by Defendant from that case provide little insight into the court's reasoning for its ruling, other than that if felt bound to follow the First DCA's opinion in *Arrowood Indemnity Co. v. Acosta, Inc.*, 58 So. 3d 286 (Fla. 1st DCA 2011). *Arrowood* is significant in that it confirmed that a court must consider both subjective and objective factors in evaluating good faith. 58 So. 3d at 290. This undersigned has done that here, and determined that Defendant's offer of judgment did not reflect a good faith proposal to settle this case.

## RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that R.J. Reynolds Tobacco Company's Motion for Attorneys' Fees (**Doc. 179**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on February 13th, 2013.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

Counsel of Record